IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JANE DOE,

          Plaintiff,

-vs.-

OMEGA PSI PHI FRATERNITY, INC., et al.

          Defendant.

CIVIL DIVISION

Case No. 2:20-CV-05363

**DEFENDANT OMEGA PSI PHI FRATERNITY INC.'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Filed on Behalf of:

Defendant, Omega Psi Phi Fraternity, Inc.

Counsel of Record for These Parties:

**HARDIN THOMPSON, P.C.**

Kenneth J. Hardin II
Pa ID 58303
Kira M. Rivera
Pa ID 313632
The Frick Building
437 Grant Street, Suite 620
Pittsburgh, PA 15219
(412) 315-7195
(412) 315-7386 (fax)
kenhardin@hardinlawpc.net
krivera@hardinlawpc.net

# TABLE OF CONTENTS

Page:

I.   TABLE OF AUTHORITIES…………………….…..…………………………………..…iv

II.  PROCEDURAL BACKGROUND………………………………………….……..1

III. FACTUAL BACKGROUND…..………………………………………………..3

IV. STANDARD OF REVIEW……..…………………………………………..…4

V.  LEGAL ARGUMENT…………………….…..…………………………………5

    A.      Plaintiff has Failed to State a Claim Upon Which Relief Can
be Granted Requiring Dismissal Pursuant to Rule 12(b)(6)…………………………5

    B.      Plaintiff's Negligence, Negligent Supervision and Negligent
Infliction of Emotional Distress Claims are Legally
Insufficient for Failure to Establish Any Duty of Care Owed
to Plaintiff That Was Breached by Defendant Omega…………………………7

            1.   Plaintiff's cannot establish a claim of Negligence as
Defendant Omega did not owe any duty to Plaintiff
and does not maintain any special relationship with its
fraternity members to control their conduct …………………..………………7

            2.   Plaintiff's cannot establish a claim of Negligent
Supervision as Defendant Omega has no special
relationship with its members to control their conduct, and
it did not know about the conduct of its members…………..……………..…14

            3.   Plaintiff cannot establish a claim of Negligent
Infliction of Emotional Distress as Defendant Omega did
not act, did not owe any duty to Plaintiff and does not maintain
any special relationship with its fraternity members………………...............16

            4.   Plaintiff cannot establish a tortious interference with contractual
relations claim against Defendant Omega as Plaintiff cannot
establish any purposeful or wrongful action taken by Defendant, and
thus the conduct complained of is not independently actionable in tort…..…….17

    C.      Because Plaintiff is Unable to Establish that Defendant Omega's
Negligence, Plaintiff's Intentional Tort Claims are Similarly Legally
Insufficient related to Plaintiff's Specific Intent Claims………………..……….....19

            1.   Plaintiff's cannot establish an assault claim against Defendant,
Omega as it took no direct action, did not participate in any way
in the words or actions of its members, and threatening

words alone are insufficient…………………………………………………..20

2. Plaintiff cannot establish an intentional infliction of emotional distress claim against Defendant, Omega due to a failure to establish any direct intentional or reckless conduct, and thus lacking the requisite level of extreme and outrageous conduct…………..22

D.  <u>Plaintiff's Punitive Damages claims are Legally Insufficient</u>…………………...24

VI. CONCLUSION…...……...………………………………………………………………..25

TABLE OF AUTHORITY

Case Law:

Acumed LLC v. Advanced Surgical Servs., Inc.,
    561 F.3d 199 (3d Cir. 2009)..................................................... 17, 18, 19
Adler, Barish, Daniels, Levin & Creskoff v. Epstein,
    393 A.2d 1175 (Pa. 1978) ........................................................ 17
Alpha Pro Tech., Inc. v. VWR Int'l LLC,
    984 F. Supp. 2d 425 (E.D. Pa. 2013) ...................................... 18
Alumni Ass'n. v. Sullivan,
    572 A.2d 1209 (Pa. 1990), appeal, denied, 647 A.2d 511 (Pa. 1994) ............... 10, 11
Ashcroft v. Iqbal,
    556 U.S. 662 (2009)................................................................. 4
Banyas v. Lower Bucks Hosp.,
    437 A.2d 1236 (Pa. Super. Ct. 1981) ...................................... 23
Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)................................................................. 4
Belmont v. MB Inv. Partners, Inc.,
    708 F.3d 470 (3d Cir. 2013)..................................................... 14
Bock v. CVS Pharmacy, Inc.,
    No. 07 412, 2008 WL 3834266 (E.D. Pa. Aug. 14, 2008)................ 22
Booker v. Lehigh Univ.,
    80 F. Supp. 234 (E.D. Pa. 1992) ............................................ 12, 13
Bradshaw v. Rawlings,
    612 F.2d 135 (Pa. 1979)........................................................... 11
Brezenski v. World Truck Transfer, Inc.,
    755 A.2d 36 (Pa. Super. 2000).................................................. 14, 15
Brisbine v. Outside In School of Experiential Education, Inc.,
    799 A.2d 89 (Pa. Super. 2002).................................................. 15
Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.,
    140 F.3d 494 (3d Cir. 1998)..................................................... 18
Browne v. Maxfield,
    663 F. Supp. 1193 (E.D. Pa. 1987) .......................................... 24
C.C.H. v. Phila. Phillies, Inc.,
    940 A.2d 336 (Pa. 2008).......................................................... 20
Chuy v. Phila. Eagles Football Club,
    595 F.2d 1265 (3d Cir. 1979).................................................... 23
Cochetti v. Desmond,
    572 F.2d 102 (3rd Cir. 1978).................................................... 24
Cucinotti v. Ortmann,
    159 A.2d 216 (Pa. 1960).......................................................... 20
Daniel Adams Assoc., Inc. v. Rimbach Publ'g, Inc.
    519 A.2d 997, 1000 (Pa. Super. 1987) ……………………………………………18
Elbasher v. Simco Sales Serv. of Pennsylvania,
    441 Pa.Super. 397, 657 A.2d 983 (1995)................................... 8

_Emerich v. Philadelphia Ctr. for Human Dev., Inc.,_
    554 Pa. 209, 720 A.2d 1032 (1998) ................................................................. 15

_Erie R.R. Co. v. Tompkins,_
    304 U.S. 64 (1938) ............................................................................................ 8

_Evans v. Philadelphia Transp. Co.,_
    212 A.2d 440 (Pa. 1965) ................................................................................... 24

_Feld v. Merriam,_
    506 Pa. 383, 485 A.2d 742 (1984) ..................................................................... 8

_Field v. Phila. Elec. Co.,_
    565 A.2d 1170 (Pa. Super. Ct. 1989) ............................................................... 22

_Golomb v. Korus,_
    396 A.2d 430 ................................................................................................... 24

_Hoy v. Angelone,_
    720 A.2d 745 (Pa. 1998) ................................................................................... 23

_Hutchinson ex rel. Hutchinson v. Luddy,_
    870 A.2d 766 (Pa. 2005) ................................................................................... 24

_In re Burlington Coat Factory Sec. Litig.,_
    114 F.3d 1410 (3d Cir. 1997) .............................................................................. 5

_James v. Duquesne Univ.,_
    936 F. Supp. 2d 618 (W.D. Pa. 2013) .............................................................. 12

_Johnson v. Caparelli,_
    625 A.2d 668 (Pa. Super. Ct. 1993) ........................................................... 22, 23

_Kazatsky v. King David Mem'l Park, Inc.,_
    527 A.2d 988 (Pa. 1987) ................................................................................... 23

_Malleus v. George,_
    641 F.3d 560 (3d Cir. 2011) ........................................................................... 4, 5

_Marshall v. Port Auth. of Allegheny Cnty.,_
    568 A.2d 931 (Pa. 1990) ..................................................................................... 8

_McCandless v. Edwards,_
    908 A.2d 900 (Pa. Super. 2006) ......................................................................... 7

_Millard v. Osborne v. Lambda Chi Alpha,_
    611 A.2d 715 (Pa. Super. 1992) ....................................................................... 12

_Nathanson v. Med. Coll. of Pa.,_
    926 F.2d 1368 (3d Cir. 1991) ........................................................................... 17

_Nat'l Data Payment Sys., Inc. v. Meridian Bank,_
    212 F.3d 849 (3d Cir. 2000) ............................................................................. 19

_Papieves v. Lawrence,_
    263 A.2d 118 (Pa. 1970) ................................................................................... 23

_Phillips v. Cnty. of Allegheny,_
    515 F.3d 224 (3d Cir. 2008) ............................................................................... 4

_Reilly v. Tiergarten Inc.,_
    633 A.2d 208 (Pa.Super. 1993) ...................................................................... 7, 8

_Richette v. Pennsylvania R.R.,_
    410 Pa. 6, 187 A.2d 910 (1963) ....................................................................... 24

_Synthes, Inc. v. Emerge Med., Inc.,_
    No. 11-1566, 2014 WL 2616824 (E.D. Pa. June 11, 2014) .............................. 19

<u>T.A. v. Allen</u>,
    669 A.2d 360 (Pa. Super. 1995) ........................................................................... 13
<u>Taylor v. Albert Einstein Med. Ctr.</u>,
    754 A.2d 650 (Pa. 2000) .................................................................................... 22
<u>Toney v. Chester Cnty. Hosp.</u>,
    961 A.2d 192 (Pa. Super. 2008) ........................................................................... 16
<u>Wenrick v. Schloemann-Siemag Aktiengesellschaft</u>,
    523 Pa. 1, 564 A.2d 1244 (1989) ........................................................................... 8
<u>Williams v. Guzzardi</u>,
    875 F.2d 46 (3d Cir. 1989) ................................................................................. 22

Statutes & Rules:

Federal Civil Procedure Rule 12(b)(6) ....................................................................... 1, 4, 5
Federal Rule of Civil Procedure 8(a)(2) ......................................................................... 4
Restatement (Second) of Torts § 21 ............................................................................. 20
Restatement (Second) of Torts § 31 ............................................................................. 21
Restatement (Second) of Torts § 46 (1965) ................................................................. 21, 22
Restatement (Second) of Torts, § 314 ....................................................................... 13, 14
Restatement (Second) of Torts, § 315 ................................................................. 8, 9, 13, 15
Restatement (Second) of Torts § 316-319 ................................................................... 15, 16
Restatement (Second) of Torts, § 766–766B (1979) ............................................................ 17
Restatement (Second) of Torts § 876 ........................................................................... 21

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

JANE DOE,                                 CIVIL DIVISION
           Plaintiff,

                                        Case No. 2:20-CV-05363
-vs.-

OMEGA PSI PHI FRATERNITY,
INC., et al.

              Defendant.

## DEFENDANT, OMEGA PSI PHI FRATERNITY'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

AND NOW comes Defendant, Omega Psi Phi Fraternity (hereinafter "Defendant Omega"), by and through its attorneys, Hardin Thompson, P.C., Kenneth J. Hardin II, Esquire and Kira M. Rivera, Esquire, and submits the Brief in Support of the Defendant Omega's 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint, and in support thereof, avers as follows:

## I.    PROCEDURAL BACKGROUND

On September 16, 2020, the Plaintiff filed a Complaint against the Defendant Omega, alleging state law tort claims of Assault, Tortious Interference with Contractual Relations, Negligence, Negligent Supervision, Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress. See Plaintiff's Complaint attached as Exhibit A. Plaintiff's claims against the Omega Psi Phi Fraternity are identical to those against Defendant, Alpha Phi Alpha Fraternity. Plaintiff also echoes claims arising out of the same and additional events against Lincoln University, including several specifically named officials of the University ("Lincoln University Defendants"). Plaintiff initiated a lawsuit in the Court of Common Pleas of Chester County, Pennsylvania notwithstanding initiating twenty counts against the Lincoln University Defendants alleging violations of various federal laws, including Title IX of the Education

1

Amendments of 1972, Section 504 of the Rehabilitation Act of 1973, Title II of the Americans with Disabilities Act, The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, The Fair Housing Act, and Title VIII of the Civil Rights Act of 1968. See Plaintiff's Complaint attached as Exhibit A. All of Plaintiff's claims against the Lincoln University Defendants are based on Plaintiff's sex/gender, gender identity and/or expression, gender stereotyping, disability and/or retaliation as follows:

(a)    Peer-on-Peer Harassment;
(b)    Disparate Treatment/Discrimination;
(c)    Failure-to-Accommodate Disability;
(d)    Direct Retaliation;
(e)    Retaliatory Hostile Environment/Harassment in Retaliation.

Plaintiff does not allege any of the above federal law violations against Omega Psi Phi Fraternity. Similarly, Plaintiff does not allege any state tort law claims against the Lincoln University Defendants. Based on the several federal questions, this matter was removed to the United States District Court for the Eastern District by Defendant Omega on October 27, 2020.

Defendant, Omega Psi Phi Fraternity filed a Motion to Dismiss Plaintiff's Complaint on December 30, 2020, and Plaintiff's Response to the same was due on January 22, 2021 per Court Order. On January 13, 2021, however, Plaintiff filed an Amended Complaint, which mooted Defendant's Motion but did not resolve any of the factual or legal insufficiencies of Plaintiff's Original Complaint outlined in Defendant's first Motion to Dismiss. Relative to Omega Psi Phi Fraternity, Plaintiff's Amended Complaint is substantially similar, alleging the identical facts and the same six (6) state law tort claims of Assault, Tortious Interference with Contractual Relations, Negligence, Negligent Supervision, Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress. See Plaintiff's Amended Complaint attached as Exhibit B. Plaintiff's Amended Complaint, however, added ten (10) additional claims against the Lincoln

University Defendants only for violations of additional federal laws, including The Pennsylvania Human Relations Act and The Pennsylvania Fair Educational Opportunities Act ("PFEOA"). Plaintiff further attached to her Amended Complaint the one-paragraph, December 5, 2019 letter quoted in the Paragraph 37(b) of her Original Complaint, which purports, however insufficient, to satisfy Plaintiff's medical proof of her emotional distress claims. See Exhibit B to Plaintiff's Amended Complaint.

## II.     FACTUAL BACKGROUND

Plaintiff's claims against all defendants arise from allegations of abuse, misgendering, harassment, discrimination and gender stereotyping suffered by Plaintiff as a transgender woman and student attending Lincoln University of Pennsylvania. Complaint ¶ 12; Amended Complaint ¶12. Plaintiff's Amended Complaint consists of thirty (30) counts against Lincoln University and individual Lincoln University individuals named in their official capacities based on Federal law violations as outlined above.  See Amended Complaint at Exhibit B. Plaintiff alleges six (6) counts, based on state tort law, against the Omega Psi Phi Fraternity specifically, including Assault, Tortious Interference with Contractual Relations, Negligence, Negligent Supervision, Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress.

Plaintiff also requests punitive damages over and above actual and compensatory damages alleging Defendant Omega was willfully blind, refused to act to protect Plaintiff because she is transgender, and acted with evil motive and reckless indifference. Complaint ¶ 173; Amended Complaint ¶ 222. Plaintiff further alleges harm, including continuous transphobia and harassment which led to becoming suicidal, depression, gender dysphoria, failing her classes, and severe emotional distress and anguish. Complaint ¶ 37; Amended Complaint ¶ 37.

### III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a Motion to Dismiss under Federal of Civil Procedure Rule 12(b)(6), a claim for relief now requires more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).) Thus, a Complaint may be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 570). While Rule 8 was "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678-79. As the Court explained in Iqbal, "[w]hile legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." Id. at 679.

Building upon the landmark United States Supreme Court decisions in Twombly and Iqbal, the United States Court of Appeals for the Third Circuit recently explained that a District Court must take three steps to determine the sufficiency of a Complaint: First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 556 U.S. at 675. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id.

As such, the court's inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at

the well pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged. <u>Malleus v. George</u>, 641 F.3d 560 (3d Cir. 2011). In conducting this three-part analysis, "a court must take well-pleaded facts as true but need not credit a complaint's 'bald assertions' or 'legal conclusions.'" <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1429 (3d Cir. 1997). In sum, "[a] motion to dismiss pursuant to Rule 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." <u>Id.</u> at 1420. As set forth in detail within Defendant Omega's Brief in Support of its Motion to Dismiss, Plaintiff cannot establish the first element of this inquiry as she cannot establish the requisite elements of her tort law causes of action against Omega Psi Phi Fraternity, Inc., an international fraternity with thousands of student members across the globe.

**IV.  LEGAL ARGUMENT**

> A.  <u>Plaintiff has Failed to State a Claim Upon Which Relief Can be Granted Requiring Dismissal Pursuant to Rule 12(b)(6) of All Claims Against Omega Psi Phi</u>

Defendant Omega is an international fraternity with a local chapter at Lincoln University. Plaintiff's claims against the Fraternity are based solely on bald and conclusory allegations of un-specified words and actions of un-identified student, fraternity members, at Lincoln University. In fact, Plaintiff is unable to specify any actual words or actions that any specific, official representative of the organization said or directed towards Plaintiff. Plaintiff's Amended Complaint is wholly devoid of any allegations of direct and overt action taken by the Omega Psi Phi Fraternity organization to adopt, encourage or participate in any of its member's actions. Nor has Plaintiff alleged any facts to support that any individual fraternity member was acting in furtherance of any decision, promotion, agreement or direction of the Omega Psi Phi Fraternity organization. Plaintiff's allegations against the fraternity serve as an attempt to make a student

organization responsible for supervising the acts of the fraternities on campus and/or the adult students attending the university. Defendant's Motion to Dismiss should be granted as there is neither a common law duty on the international fraternity nor one assumed by it to control the conduct of local chapter members, attending Lincoln University or any other institution. Furthermore, Plaintiff fails to establish the existence of any special relationship between the international fraternity and its local chapter members and/or Plaintiff to support a pre-existing duty of care.

The membership of the students within the Omega fraternity serves as only one facet of the undergraduate identity formed by students throughout higher education. Students are encouraged to grow not only their knowledge base but their experiences and networks through involvement in a variety of extracurricular activities. Plaintiff may classify the individuals that allegedly harassed her using a variety of descriptors, including male, student, fraternity member, cheerleader[1], residential assistant, Business club member, History major, etc. These classifications, in and of themselves, do not make the respective student organization any more responsible for the student member's individual, third-party actions towards other students at Lincoln University or any institution where the organization holds a local chapter. To accept Plaintiff's theory of liability against the instant international fraternity, the court would effectively allow limitless claims against Lincoln University's student organizations for the actions of its student members, including for instance, the athletics department, specific major department/s, and/or other on-campus organizations based solely on the status of the alleged wrongdoer as a member. As set forth more fully herein, Defendant's Motion to Dismiss all state law tort claims

---

[1] Relative to Plaintiff's alleged exclusion from "educational programs and activities," Plaintiff specifically details allegations of harassment and discrimination against the Lincoln University cheerleading team or squad in 2017 and 2019. See Plaintiff's Amended Complaint ¶¶18(b,c,d) and 25(a,b,c). However, as is apparent from the instant case caption, the respective student organization is not named in this lawsuit similar to the fraternity Defendants.

against Omega Psi Phi Fraternity for actions of students, who only happen to identify in part as a fraternity member, should be granted.

B.  <u>Plaintiff's Negligence, Negligent Supervision and Negligent Infliction of Emotional Distress Claims are Legally Insufficient for Failure to Establish Any Duty of Care Owed to Plaintiff That was Breached by Defendant Omega</u>

Plaintiff's Complaint suggests Defendant Omega was negligent in subjecting Plaintiff to gender stereotyping, and denying and depriving her of educational programs, activities and opportunities, on a discriminatory basis as a transgender female. Complaint ¶ 140; Amended Complaint ¶188. Plaintiff further alleges that Defendant Omega failed to provide effective supervision and control over the actions of its members, failed to have a policy to address discrimination or harassment based on gender identity, and failed to take reasonable measures to protect Plaintiff when harassed by fraternity members. Complaint at ¶ 144-146; Amended Complaint ¶192-194. Despite these allegations, Plaintiff's claims of negligence, negligent supervision, and negligent infliction of emotional distress fail as a matter of law for failure to establish the first element of any action rooted in negligence, that Defendant Omega owed any duty to Plaintiff.

1.  *Plaintiff's cannot establish a claim of Negligence as Defendant Omega did not owe any duty to Plaintiff and does not maintain any special relationship with its fraternity members to control their on-campus conduct.*

The elements of a cause of action for negligence are well established. A prima facie case of negligence requires a plaintiff to prove four elements: (1) a duty or obligation recognized at law; (2) breach of that duty by the defendant; (3) a causal connection between the defendant's breach of that duty and the resulting injury; and (4) actual loss or damage suffered by the complainant. <u>See</u> <u>McCandless v. Edwards</u>, 908 A.2d 900, 903 (Pa. Super. 2006); <u>Reilly v.</u>

Tiergarten Inc., 633 A.2d 208, 210 (Pa.Super. 1993), appeal denied, 649 A.2d 675 (Pa. 1994). [2] It

is a fundamental principle of tort law that a claim sounding in negligence is unsustainable unless

Defendant owed Plaintiff a duty of care, which has been breached. See Id.; Marshall v. Port Auth.

of Allegheny Cnty., 568 A.2d 931 (Pa. 1990).

Plaintiff seeks to impose a duty on an international fraternity to supervise and control the

acts of its local chapter members, or in alternative, or a duty to protect Plaintiff from its members.

Plaintiff cannot establish such duty pursuant to Pennsylvania law. In Wenrick v. Schloemann-

Siemag Aktiengesellschaft, 523 Pa. 1, 564 A.2d 1244 (1989), the Supreme Court said:

> Before a person may be subject to liability for failing to act in a given situation, **it
> must be established that the person has a duty to act; if no care is due, it is
> meaningless to assert that a person failed to act with due care.** Certain relations
> between parties may give rise to such a duty. Although each person may be said to
> have a relationship with the world at large that creates a duty to act where his own
> conduct places others in peril, Anglo-American common law has for centuries
> accepted the fundamental premise that mere knowledge of a dangerous situation,
> even by one who has the ability to intervene, is not sufficient to create a duty to act.

Id. at 8, 564 A.2d at 1248 (emphasis added). See Restatement (Second) of Torts, § 314. Further,

the Restatement (Second) of Torts provides:

> There is no duty so to control the conduct of a third person as to prevent him from
> causing physical harm to another unless (a) a special relation exists between the
> actor and the third person which imposes a duty upon the actor to control the third
> person's conduct, or (b) a special relation exists between the actor and the other
> which gives to the other a right to protection.

Restatement (Second) of Torts, § 315. Therefore, "[a]s a general rule, a person is not liable for the

conduct of another in the absence of a special relationship imposing a pre-existing duty." Elbasher

v. Simco Sales Serv. of Pennsylvania, 441 Pa.Super. 397, 398-400, 657 A.2d 983, 984 (1995),

citing Feld v. Merriam, 506 Pa. 383, 392, 485 A.2d 742, 746 (1984). Section 314 of the

---

[2] Pennsylvania law applies because federal courts sitting in diversity cases must apply the substantive law of the states
where they sit. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).

Restatement lists the following special relations which give rise to a duty to act affirmatively to protect another:

> (1) A common carrier is under a duty to its passengers to take reasonable action (a) to protect them against unreasonable risk of physical harm, and (b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others. (2) An innkeeper is under a similar duty to his guests. (3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation. (**4**) **One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other.**

Restatement (Second) of Torts, § 315 (emphasis added).

Plaintiff's claims against Defendant Omega imply the custodial relationship emphasized above between the fraternity towards its student members to impose an *in loco parentis* duty upon the fraternity. Unfortunately, this view has been rejected by the Pennsylvania courts and federal courts interpreting Pennsylvania law. The record fails to set forth any special relationship between the Omega Psi Phi Fraternity and its members and/or Plaintiff.

Further, by Plaintiff's own admissions, Omega Psi Phi Fraternity do not make the decision that led to Plaintiff's housing assignment. Plaintiff provides: "In or around 2017/2018, Doe **was assigned by Defendant, Lincoln University of Pennsylvania, to live in a solo suite that belonged to the Title IX Coordinator**, and which is otherwise used or known as a medical suite when unoccupied, within a facility which was not appropriate because it was for men, and specifically within a male fraternity." See Amended Complaint, ¶ 17(l)(emphasis added). Plaintiff further states that "**Lincoln University made this discriminatory decision regarding Doe's housing** on account of the fact that its employees did not otherwise know what to do with the Plaintiff." See Id. (emphasis added). To the contrary, Plaintiff provides that it was the University, not the Omega Psi Phi Fraternity organization, that influenced the individual fraternity members'

behavior: "The University's own discriminatory conduct also set an example for the further harassment Doe suffered from the other male students in the fraternity in which she was forced to live by the University,…" See Plaintiff's Amended Complaint, ¶ 17(p). Plaintiff further provides that after a formal Pennsylvania Human Relations Commission complaint against the University "provided no meaningful assistance," the University "Defendants took no disciplinary action against the harassers and/or the fraternity at any point, the transphobia continued, the harassers were emboldened, and Doe experienced further harassment." See Plaintiff's Amended Complaint, ¶ 33-34.  As such, Plaintiff's Complaint fails to plead any action taken by Omega Psi Phi Fraternity regarding her placement, let alone the assumption of any duty to protect Plaintiff.

There is no legal basis, under Pennsylvania law, to impose an affirmative duty on an international fraternity to protect Plaintiff, a non-member, by way of controlling the actions of its local chapter members throughout the university campus. Pennsylvania Courts have yet to consider the liability of a fraternity based on allegations that its members subjected other, non-member university students to harassment and discrimination. However, Pennsylvania courts have declined to hold fraternities and universities, alike, liable for the actions of its student members in serving alcohol to students and resulting in harm to that student and/or others. The Courts' rationale for dismissing those claims are applicable and instructive to the instant case and facts. In fact, Defendant's argument for dismissal in this case is even more compelling as the alleged actions of the fraternity members herein are mere expressed words and opinions of individual student members instead of the potential illegal service of alcohol to minors, some resulting in physical injury and/or death, already considered by the courts.

In <u>Alumni Ass'n. v. Sullivan</u>, 572 A.2d 1209 (Pa. 1990), the Court considered whether Bucknell University could be held responsible for the conduct of a fraternity in providing alcohol

10

to an underage student that became intoxicated and started a fire which damaged a neighboring

fraternity. Finding it would be inappropriate to impose an *in loco parentis* duty upon the

University, the Court endorsed the observations of Federal Judge Aldisert in Bradshaw v.

Rawlings, 612 F.2d 135 (Pa. 1979):

> Our beginning point is a recognition that the modern American college is not an
> insurer of the safety of its students. [T]he authoritarian role of today's college
> administrations has been notably diluted in recent decades. Trustees,
> administrators, and faculties have been required to yield to the expanding rights and
> privileges of their students. *** College students today are no longer minors; they
> are now regarded as adults in almost every phase of community life. *** As a result
> of [societal changes], **eighteen year old students are now identified with an
> expansive bundle of individual and social interests and possess discrete rights
> not held by college students from decades past**. There was a time when college
> administrators and faculties assumed a role in loco parentis. Students were
> committed to their charge because the students were considered minors. A special
> relationship was created between college and student that imposed a duty on the
> college to exercise control over student conduct and, reciprocally, gave the students
> certain rights of protection by the college. The campus revolutions of the late sixties
> and early seventies were a direct attack by the students on rigid controls by the
> colleges and were an all-pervasive affirmative demand for more student rights. ***
> These movements, taking place almost simultaneously with legislation and case
> law lowering the age of majority, produced fundamental changes in our society.
> *** **Regulation by the college of student life on and off campus has become
> limited. Adult students now demand and receive expanded rights of privacy in
> their college life…. College administrators no longer control the broad arena
> of general morals. *** But today students vigorously claim the right to define
> and regulate their own lives**. *** Thus, for purposes of examining fundamental
> relationships that underlie tort liability, the competing interests of the student and
> of the institution of higher learning are much different today than they were in the
> past. **[T]he change has occurred because society considers the modern college
> student an adult, not a child of tender years. *** [T]he circumstances show
> that students have reached the age of majority and are capable of protecting
> their own self interests…**

Bradshaw, 612 F.2d at 138-40 (footnotes omitted)(emphasis added). Plaintiff cannot escape the

instruction provided by the Court in Alumni Ass'n. Plaintiff's Complaint does not and simply

cannot establish that the fraternity assumed any special duty to control or supervise the actions of

its local chapter, fraternity members or to protect Plaintiff from harm done throughout Lincoln University.

In James v. Duquesne Univ., 936 F. Supp. 2d 618, 628 (W.D. Pa. 2013), James, a Duquesne student-athlete, was shot on Duquesne property following a school-sponsored dance, and sued Duquesne on the theory that it had a "duty to provide security," essentially using a similar argument advanced here by Plaintiff.  This Court rejected that argument, opining that a common carrier owes no "duty to protect [] from the spontaneous criminal acts of third persons." Id. at 646.

Pennsylvania courts have further held that the existence of social policies adopted by a university did not create a duty of care to protect the students when the organization was not present and took no part in the student's actions. In Millard v. Osborne v. Lambda Chi Alpha, 611 A.2d 715 (Pa. Super. 1992), plaintiff's estate sought to impose liability on Thiel College for a fatal motorcycle accident in which the decedent, while intoxicated, caused a head-on collision. Plaintiff claimed decedent became intoxicated at an on-campus fraternity house, which permitted alcohol consumption pursuant to an alcohol policy adopted by the College. Despite acknowledging Thiel College assumed certain specific responsibilities through its policy, the Millard Court rejected the existence of an *in loco parentis* duty and dismissed the claim. The Court noted that, similar to the current matter, no representatives of the organization were present while the actions took place nor did the fraternity assist or participate in the alleged acts. See Id.

In Booker v. Lehigh Univ., 80 F. Supp. 234 (E.D. Pa. 1992), this Honorable Court, interpreting Pennsylvania law, reached a similar conclusion. In Booker, a university student became intoxicated at an on-campus fraternity party and subsequently injured herself in a fall while walking back to her dorm. Seeking damages against the university, plaintiff argued that the university adopted a social policy on the use of alcohol, assuming a duty to monitor alcohol use.

12

In granting summary judgment in favor of the university, the Court rejected plaintiff's argument that Lehigh, through the promulgation of social policy, undertook a duty to protect its students and supervise on campus fraternity functions. The Court concluded:

> In short, Lehigh was not a social host for the parties in question. Even if we assume that Lehigh was aware that plaintiff was drinking alcohol by virtue of its understanding that underage drinking was common on college campuses, including its own, Pennsylvania imposes no duty upon its colleges to supervise private social functions on their campuses to ensure that no underage drinking occurs…. The Social Policy was not an assumption of such a duty but rather a policy statement that supposedly responsible adult students should be aware of their own behavior.

Booker, 80 F. Supp. at 241.

As established by the above Pennsylvania cases, Plaintiff cannot credibly claim that the Omega Psi Phi Fraternity owed her any duty under these circumstances. Pursuant to Section 315 of the Restatement (Second) of Torts, there is generally no duty to control the conduct of a third person so as to prevent him or her from causing physical harm to another person unless a special relationship exists between the actor and the third person or the actor and the person injured. In this case, Plaintiff fails to prove such a special relationship between the fraternity and its members and/ or Plaintiff that would create an exception to the general rule.

Plaintiff's Complaint lacks any claim or allegations of direct, affirmative conduct taken by the Omega Psi Phi Fraternity, let alone active encouragement by the fraternity organization.  There are no facts averred that any official representatives of the fraternity, instead of students, were present, directed, assisted or participated in any way in Plaintiff's on-campus interactions with fraternity members.

This claim is similarly insufficient as Plaintiff has not pled that the fraternity was aware of the actions of its members, of her injuries or of any complaints regarding the fraternity members at any time. See T.A. v. Allen, 669 A.2d 360, 362 (Pa. Super. 1995); Restatement (Second) of

Torts, § 314. Per the record, Plaintiff never voiced or issued any specific complaints to the Omega Psi Phi Fraternity. Of significance, Plaintiff Complaint alleges making direct complaints only to officials of Lincoln University. See Complaint ¶¶ 18, 20, 25, 26, 28; Amended Complaint ¶¶ 19, 21, 26, 27, 28, 29. Of further note, Plaintiff admits that in October 2019, in an attempt to remedy the situation based on substantially similar issues set forth in the instant Complaint, she filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC") alleging discrimination and harassment against Lincoln University only. Complaint at ¶ 32; Amended Complaint at ¶ 33. Plaintiff also attached to her Amended Complaint the One-Year Letter Right to Sue Letter from the PHRC related to her Complaint against the University. See Amended Complaint, Exhibit A.

The Omega Psi Phi Fraternity simply cannot assume liability merely because it is one of various university organizations, of which Plaintiff's student harassers were members. Since the thrust of Plaintiff's claims rest upon a legally insufficient *in loco parentis* duty upon an international fraternity to control or take responsibility for the actions of its adult, local chapter members, Defendant, Omega Psi Phi Fraternity's Motion to Dismiss should be granted related to Plaintiff's claims of negligence for failure to establish any duty of care owed to its members and/or Plaintiff.

    2. *Plaintiff's cannot establish a claim of Negligent Supervision as Defendant Omega has no special relationship with its members to control their conduct, and it did not know about the on-campus conduct of its members.*

A claim for negligent hiring or supervision under Pennsylvania law requires a plaintiff to demonstrate the four elements of a common law negligence claim: duty, breach, causation, and damages. Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 487-88 (3d Cir. 2013) (citing Brezenski v. World Truck Transfer, Inc., 755 A.2d 36, 42 (Pa. Super. 2000)). As argued more fully above,

Plaintiff cannot establish a prima facie case of general negligence as there is no legally cognizable

duty on Defendant Omega to control the on-campus conduct of its local chapter members. Thus,

Defendant Omega had not duty to protect Plaintiff, a non-member, student on campus. As

explained in Brisbine v. Outside In School of Experiential Education, Inc., 799 A.2d 89 (Pa. Super.

2002),

> [g]enerally, there is no duty to control the acts of a third party unless the "defendant
> stands in a special relationship with either the person whose conduct needs to be
> controlled or in a relationship with the intended victim of the conduct, which give
> the intended victim a right to protection." [Brezenski v. World Truck Transfer,
> Inc., 755 A.2d 36, 40 (Pa. Super. 2000)] (citing Emerich v. Philadelphia Ctr. for
> Human Dev., Inc., 554 Pa. 209, 720 A.2d 1032 (1998)). See also Restatement
> (Second) of Torts § 315. A special relationship is limited to the relationships
> described in Sections 316-319 of the Restatement (Second) of Torts. See
> Brezenski, 755 A.2d at 40-41. The enumerated relationships specified in the
> Restatement are a parent's duty to control a child (Section 316); a master's duty to
> control a servant (Section 317); a possessor of land's duty to control a licensee
> (Section 318); and the duty of those in charge of individuals with dangerous
> propensities to control those individuals (Section 319). See Restatement (Second)
> of Torts §§ 316-319.

Id. at 93. As set forth herein, Plaintiff cannot establish the existence of any special relationship

between Defendant Omega and its fraternity members that establish that the fraternity is

responsible for the conduct of its individual student members. Further, Plaintiff cannot cite any

authority to support the proposition that Defendant Omega, an international fraternity, has an *in

loco parentis* duty to control the actions of its adult fraternity members.

Of note and as discussed above, Defendant Omega was not made aware of the alleged

actions of its fraternity members as outlined in Plaintiff's Complaint – thus there is no support that

Defendant Omega knew or should have known of its member's conduct. Given the specific facts

of the case, Brisbine's analysis focused on Section 319 of the Restatement (Second) of Torts, Duty

of Those in Charge of Persons Having Dangerous Propensities. Id. at 89. Section 319 of the

Restatement (Second) provides the following: "One who takes charge of a third person whom he

15

knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." Plaintiff does not assert liability pursuant to Section 319 nor does she present facts which could give rise to its applicability. A review of the factual averments contained in Plaintiff's Complaint reveal no basis for a negligent supervision claim to go forward. For these reasons, Defendant, Omega Psi Phi Fraternity's Motion to Dismiss should be granted related to Plaintiff's claims of negligent supervision.

      3.   *Plaintiff cannot establish a claim of Negligent Infliction of Emotional Distress as Defendant Omega did not act, did not owe any duty to Plaintiff and does not maintain any special relationship with its fraternity members to control or take responsibility for their conduct.*

A plaintiff seeking recovery for negligent infliction of emotional distress must also make out the traditional elements of a negligence claim. <u>Toney v. Chester Cnty. Hosp.</u>, 961 A.2d 192, 198 (Pa. Super. 2008), aff'd, 36 A.3d 83 (Pa. 2011). As argued more fully above, Plaintiff cannot establish a prima facie case of general negligence as there is no legally cognizable duty on Defendant Omega to control the on-campus conduct of its local chapter members. As such, Plaintiff has not stated a plausible claim for negligent infliction of emotional distress.

Notwithstanding the above, Pennsylvania law recognizes a claim for negligent infliction of emotional distress in four factual scenarios: "(1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative." <u>Id.</u> at 197-198 (citation omitted). As set forth above, Plaintiff cannot cite any authority to support to proposition that Defendant Omega, an international fraternity, has or assumed any duty to control the actions of its adult fraternity members. Further, Plaintiff has failed to assert any direct action taken by the

fraternity to support her claim for negligent or intentional emotional distress. As such, Defendant, Omega Psi Phi Fraternity's Motion to Dismiss should be granted related to Plaintiff's claims of negligent infliction of emotional distress.

        4.   *Plaintiff cannot establish a tortious interference with contractual relations claim against Defendant Omega as Plaintiff cannot establish any purposeful or wrongful action taken by Defendant, and thus the conduct complained of is not independently actionable in tort.*

Tortious interference with an existing or prospective contract under Pennsylvania law requires:

(1) the existence of a contractual relationship or prospective contractual or economic relationship between the plaintiff and another party; (2) **an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship or preventing the prospective relationship from occurring**; (3) the absence of privilege or justification on the part of the defendant; (4) the occasioning of actual damage as a result of defendant's conduct; and (5) **for a prospective contractual or economic relationship, a reasonable likelihood that the relationship would have occurred but for defendant's interference.**

Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 212 (3d Cir. 2009) (citations omitted) (emphasis added); see also Restatement (Second) of Torts, § 766–766B (1979). Pennsylvania law provides "[o]ne who **intentionally and improperly** interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." Restatement (Second) of Torts § 766 (1979) (emphasis added).[3]

To support her claim, Plaintiff alleges that she "lived **by agreement** in apartment-style living on campus with members of [Omega]." See Amended Complaint ¶184. However, in

---

[3] Pennsylvania has expressly adopted this section of the Restatement. See Adler, Barish, Daniels, Levin & Creskoff v. Epstein, 393 A.2d 1175 (Pa. 1978). "The Adler, Barish court used language from the Restatement (Second) of Torts § 766 (Tent. Draft No. 23, 1977). However, the final restatement is the same in substance." Nathanson v. Med. Coll. of Pa., 926 F.2d 1368, 1388 n.14 (3d Cir. 1991) (citation omitted).

contradiction to Plaintiff's alleged living "agreement," in the same Amended Complaint, Plaintiff states repeatedly that she was "forced to live as a transgender woman" in the fraternity "against her wishes." <u>See</u> Amended Complaint ¶¶ 20, 182, 189, 190, 198, 199, 207, 208, 217, 218. In fact, the crux of Plaintiff's Complaint in general is that she not only **disagreed** with every housing arrangement at the University, but considered her housing placement discriminatory:

> The living arrangement for Doe constitutes disparate treatment in that it was different than what is provided to a student who identifies as a cisgender female, and the decisions singled out the Plaintiff for isolation, exclusion, harassment, which is a type of discrimination that individuals with disabilities often experience in particular.

Amended Complaint, ¶ 17(n). Essential to the right of recovery under a tortious interference with contract claim is the existence of a contractual relationship between the plaintiff and a third person other than the defendant. <u>Daniel Adams Assoc., Inc. v. Rimbach Publ'g, Inc.</u>, 519 A.2d 997, 1000 (Pa. Super. 1987). Based on Plaintiff's inherent disagreement, there was no contract or meeting of the minds between herself and Lincoln University specific to her living arrangement within the fraternity. Further, to the extent that any agreement is found, the "agreement" or "contract" is for housing generally, which Plaintiff was consistently provided in on-campus suites by the University. Further, all changes to her living situations were specifically requested by Plaintiff. Amended Complaint, ¶¶ 30, 31.

Further, Plaintiff's tortious interference claim must be dismissed because Plaintiff fails to "demonstrate that a defendant engaged in conduct that was actionable on a basis independent of the interference claim." <u>Acumed</u>, at 215; <u>see also</u> <u>Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.</u>, 140 F.3d 494, 531 (3d Cir. 1998); <u>see also</u> <u>Alpha Pro Tech., Inc. v. VWR Int'l LLC</u>, 984 F. Supp. 2d 425, 450 (E.D. Pa. 2013) (citing <u>Acumed</u>, 561 F.3d at 219 & n. 15) ("[T]he gravamen of the 'independently actionable' requirement is that the conduct complained of, upon which the

plaintiff seeks to base its tortious interference claim, is independently actionable in tort.").[4] Plaintiff has failed to plead and establish any intentional purposeful, and/or wrongful conduct on behalf of Omega Psi Phi Fraternity.

As set forth within Defendant Omega's Motion to Dismiss, all of Plaintiff's state law tort claims should be dismissed for failure to establish a prima facie case against Defendant on all counts for want of a duty of care and/or failure to establish any direct action taken by Defendant Omega. Thus, Defendant Omega's conduct is not actionable for a reason independent from the tortious interference claim and must be dismissed. See Acumed, 561 F.3d at 216 (reversing jury verdict in favor of the plaintiff for tortious interference claim, as a matter of law, where the jury had determined that the defendant's conduct was not independently actionable since they returned a defense verdict on the underlying fraud claim); Synthes, Inc. v. Emerge Med., Inc., No. 11-1566, 2014 WL 2616824, at *18-24 (E.D. Pa. June 11, 2014) (dismissing a tortious interference claim where underlying claims for unfair competition and trade libel had already been dismissed). Therefore, Defendant, Omega Psi Phi Fraternity's Motion to Dismiss should be granted related to Plaintiff's claims of tortious interference with contractual relations.

C.   Because Plaintiff is Unable to Establish that Defendant Omega's Actions were Negligent, Plaintiff's Intentional Tort Claims are Similarly Legally Insufficient.

Plaintiff cannot establish a prima facie case of general negligence as there is no legally cognizable duty on Defendant Omega to control the on-campus conduct of its local chapter members. Due to Plaintiff's inability to establish negligence on behalf of Defendant Omega, Plaintiff clearly cannot meet the higher burden of intent to do harm. Plaintiff's Complaint is devoid

---

[4] The Third Circuit has also recognized that Pennsylvania courts have not interpreted this "wrongful means" element, but held that it was likely that the Pennsylvania Supreme Court would adopt this meaning, that is, for conduct to be wrongful it must be actionable for a reason independent from the claim of tortious interference itself. See id. at 215-16 (citing Nat'l Data Payment Sys., Inc. v. Meridian Bank, 212 F.3d 849, 858 (3d Cir. 2000)).

of any allegation of direct, intentional action or conduct taken on behalf of Defendant Omega that gave rise to her intentional tort claims. Plaintiff fails to establish who, specifically from the Fraternity was responsible for her harm. Moreover, Plaintiff fails to establish the actual actions or words these individuals allegedly used. Merely alleging that a person who potentially belonged to an organization said hurtful words toward the Plaintiff in and of itself is insufficient to establish a cause of action against Defendant Omega.  Because Defendant Omega cannot form the requisite intent for the actions of its third-party student members, Plaintiff's claims for assault and intentional infliction of emotional distress must also fail as a matter of law.

1.  *Plaintiff's cannot establish an assault claim against Defendant, Omega as it took no direct action, did not participate in any way in the words or actions of its members, and threatening words alone are insufficient.*

In Count XXXI, Plaintiff alleges that Defendant Omega is liable to her for assault. See Amended Complaint. Plaintiff asserts that members of the fraternity subjected her to repeated apprehensions of physical violence and aggression on account of her gender identity, gender expression, and/or on account of gender stereotyping. Complaint ¶ 133; Amended Complaint ¶ 181. Under Pennsylvania law, an individual commits the tort of battery when he or she intentionally causes a "harmful or offensive" contact with another person's body. C.C.H. v. Phila. Phillies, Inc., 940 A.2d 336, 340 n.4 (Pa. 2008). The tort of assault is committed when an individual acts with the intent "to put another person in reasonable apprehension of an immediate battery, and which succeeds in causing an apprehension of such battery." Cucinotti v. Ortmann, 159 A.2d 216, 217 (Pa. 1960).[5]

---

[5] See also Restatement (Second) of Torts § 21 (defendant liable for assault if "(a) he acts intending to cause a harmful or offensive contact with the person of the other … or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension").

Plaintiff's assault claim obviously fails as a matter of law. First, Plaintiff cannot establish a prima facie case against the fraternity as she has not and cannot assert any action on behalf of Defendant Omega that gave rise to her assault claim. Instead, Plaintiff's Complaint consists only of allegations of generic actions taken and words stated by un-identified student members. Without details of the actions taken by the fraternity, Plaintiff's cannot establish requisite intent to harm Plaintiff.

Further, there is no basis in this case or in Pennsylvania law to hold Defendant Omega liable for the day-to-day actions of its fraternity members on a university campus. To be held liable for the tortious acts of another on a concerted-action theory, the defendant must have participated in the acts which caused the harm, or encouraged and assisted the members, who directly caused the injuries by participating in a joint activity.[6] None of that applies to Omega Psi Phi here, as Defendant Omega clearly did not perform, speak, co-sign, sponsor or direct any of the alleged words or actions of its members, nor did it pursue a common plan with or lend encouragement or assistance to the third-party fraternity members.

Lastly, words alone, no matter how threatening, do not constitute an assault as "the actor must be in a position to carry out the threat immediately, and he must take some affirmative action to do so" for there to be a reasonable apprehension of fear. Id.[7] This well-established rule clearly dooms Plaintiff's assault claim because she does not allege that the fraternity organization committed any acts and/or that the statements of the fraternity members were accompanied by any overt act demonstrating an intent to immediately carry the threat into execution as to anyone, much

---

[6] See Restatement (Second) of Torts § 876 (concerted-action liability attaches when the defendant "does a tortious act in concert with the other," acts "pursuant to a common design with him," or "gives substantial assistance or encouragement to the other"); Keeton et al., Prosser & Keeton on Torts § 46 (5th ed. 1984).

[7] See also Restatement (Second) of Torts § 31, cmt. a ("Ordinarily mere words, unaccompanied by some act apparently intended to carry the threat into execution, do not put the other in apprehension of an imminent bodily contact, and so cannot make the actor liable for an assault.").

less Plaintiff. Instead, Plaintiff only summarily alleges that un-identified fraternity members harassed, abused, misgendered, targeted and discriminated against her and refused her participation in a fashion show based on her gender. Complaint ¶¶ 12, 16(l, s, t), 17(f, g, h); Amended Complaint ¶¶ 13, 17(l, s, t), 18 (f, g, h). Because Defendant Omega took no direct action, did not participate in any way in the words or actions of its members, and threatening words alone are insufficient to establish a claim of assault, Plaintiff's claim for assault should be dismissed.

> 2. *Plaintiff cannot establish an intentional infliction of emotional distress claim against Defendant, Omega due to a failure to establish any direct intentional or reckless conduct, and thus lacking the requisite level of extreme and outrageous conduct.*

The Pennsylvania Supreme Court has yet to formally recognize a cause of action for intentional infliction of emotional distress. Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000). The Pennsylvania appellate courts, however, have recognized the tort. Field v. Phila. Elec. Co., 565 A.2d 1170, 1183–84 (Pa. Super. Ct. 1989). The United States Court of Appeals for the Third Circuit, predicting that the Pennsylvania Supreme Court will ultimately recognize the tort, has also allowed recovery for intentional infliction of emotional distress. Williams v. Guzzardi, 875 F.2d 46 (3d Cir. 1989). Therefore, this Court is bound to conclude that Pennsylvania permits recovery for intentional infliction of emotional distress.

In Pennsylvania, the Restatement (Second) of Torts sets forth the minimum elements necessary to sustain a cause of action for intentional infliction of emotional distress. Taylor, 754 A.2d at 652. In order to recover, a plaintiff must plead and prove that (1) by extreme and outrageous conduct (2) defendant intentionally or recklessly (3) caused (4) severe emotional distress. Id. (citing Restatement (Second) of Torts § 46 (1965)). "It is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous [as] to permit recovery." Bock v. CVS Pharmacy, Inc., No. 07 412, 2008 WL 3834266,

at *2 (E.D. Pa. Aug. 14, 2008) (quoting <u>Johnson v. Caparelli</u>, 625 A.2d 668, 671 (Pa. Super. Ct. 1993), appeal denied, 647 A.2d 511 (Pa. 1994)). Pennsylvania courts further require that the existence of emotional distress be supported by competent medical evidence. <u>Kazatsky v. King David Mem'l Park, Inc.</u>, 527 A.2d 988, 995 (Pa. 1987).

Plaintiff's Complaint lacks any allegation of intentional action taken by the fraternity, but rather only alleges the actions of local chapter members. As such, Plaintiff has failed to plead any intentional or reckless conduct on behalf of the Omega Psi Phi Fraternity, specifically, that may have led to Plaintiff's claim. Additionally, there are serious doubts whether the actions and words of the fraternity members rise to the high level of extreme and outrageous conduct that Pennsylvania courts have recognized in the past.[8] Compounding Plaintiff's failure to assert any allegations to support Defendant's conduct was extreme and outrageous, the Claim must still fail as Plaintiff's emotional distress needs to be supported by competent medical evidence, which has not been proven or even provided in this matter. Competent expert medical evidence confirming the existence, cause, and severity of the distress is required in order for Plaintiff to recover on this Claim. See <u>Williams</u>, 875 F.2d at 5152. Plaintiff's Amended Complaint attempts to cure this insufficiency through her attachment of Exhibit B. However, the exact, one-paragraph, letter was quoted in Plaintiff's Original Complaint and is similarly insufficient. As such, Plaintiff's Claim of Intentional Infliction of Emotional Distress should be dismissed.

---

[8] <u>See</u> <u>Hoy v. Angelone</u>, 720 A.2d 745, 755 (Pa. 1998) (citing <u>Papieves v. Lawrence</u>, 263 A.2d 118, 119 (Pa. 1970) (holding defendant's conduct of killing the plaintiff's son in a hit and run accident and burying the boy in a field did rise to the level of extreme and outrageous); <u>Banyas v. Lower Bucks Hosp.</u>, 437 A.2d 1236, 1237-1238 (Pa. Super. Ct. 1981) (holding defendants conduct of falsifying medical records in order to implicate plaintiff in the death of a patient, leading to plaintiff's indictment for homicide rose to the level of extreme and outrageous); <u>Chuy v. Phila. Eagles Football Club</u>, 595 F.2d 1265, 1269-70 (3d Cir. 1979) (holding defendant's team physician's conduct of falsely informing the media that the plaintiff suffered from a fatal disease was extreme and outrageous).

D.    <u>Plaintiff's Punitive Damages Claims are Legally Insufficient</u>

Plaintiff seeks punitive damages against the Omega Defendants. As set forth below, however, Plaintiff's claim for punitive damages fail as a matter of law, as they are legally insufficient. Plaintiff's claims for punitive damages must be dismissed. Plaintiff's Complaint alleges tort claims. For punitive damages to be awarded, there must be acts of malice, vindictiveness and a wholly wanton disregard of the rights of others. <u>See</u> <u>Richette v. Pennsylvania R.R.</u>, 410 Pa. 6, 16–17, 187 A.2d 910, 916 (1963); <u>Golomb v. Korus</u>, 396 A.2d 430, 261 Pa. Sup. Ct. 344, 348 (Pa. Super. Ct. 1978).

Reckless or malicious conduct only occurs when the conduct of the claimed tortfeasor has been shown to be intentional or to have been committed with an intentional disregard of known risks which are substantially likely to cause harm. <u>See</u> <u>Evans v. Philadelphia Transp. Co.</u>, 212 A.2d 440 (Pa. 1965).  Accordingly, a punitive damages claim must be supported by evidence sufficient to establish that the defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and evidence that the defendant acted or failed to act in conscious disregard of that risk. <u>Hutchinson ex rel. Hutchinson v. Luddy</u>, 870 A.2d 766, 772 (Pa. 2005).  Further, in Pennsylvania the imposition of punitive damages is an extreme remedy.  <u>Browne v. Maxfield</u>, 663 F. Supp. 1193 (E.D. Pa. 1987).  Punitive damages are not favored under the law. <u>Cochetti v. Desmond</u>, 572 F.2d 102 (3rd Cir. 1978).

Here, Plaintiff has not alleged any facts that would support the inference the Defendant fraternity acted with malice, vindictiveness or wanton disregard of the rights of Plaintiff. In fact, Plaintiff cannot establish that Defendant Omega, an international fraternity, was specifically aware of the actions and spoken words of its members. Thus, Plaintiff cannot establish any affirmative, intentional or reckless act taken on behalf of the fraternity that desired or sought to cause Plaintiff

harm. As such, Plaintiff's punitive damages claims should be stricken and dismissed with prejudice.

## V.   CONCLUSION

For the reasons set forth herein, Defendant, Omega Psi Phi Fraternity respectfully request that this Honorable Court grant the within Motion to Dismiss and dismiss all claims against the Defendant, Omega Psi Phi Fraternity set forth in Plaintiff's Amended Complaint, with prejudice.

Respectfully Submitted,

**HARDIN THOMPSON, P.C.**

 _/s/ Kira M. Rivera_
Kenneth J. Hardin II PA ID 58303
Kira M. Rivera PA ID 313632
The Frick Building
437 Grant Street, Suite 620
Pittsburgh, Pennsylvania 15219
(412) 315-7195
(412) 315-7386 (fax)
***Attorney for Defendant, Omega Psi Phi Fraternity***